IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,  3:10-CR-00229-BR

    Plaintiff,

OPINION AND ORDER

v.

DAVID VANBEENEN,

    Defendant.

**S. AMANDA MARSHALL**
United States Attorney
**MICHELLE HOLMAN KERIN**
Assistant United States Attorney
1000 S.W. Third Ave., Ste 600
Portland, OR 97204
(503) 727-1000

    Attorneys for Plaintiff

**THOMAS K. COAN**
1001 S.W. Fifth Ave.
Suite 1400
Portland, OR 97204
(503) 221-8736

    Attorneys for Defendants

**BROWN, Judge.**

This matter comes before the Court on the issue of restitution.

## BACKGROUND

In April 2006 Defendants David VanBeenen and Josh Hall established Team Capital and Investment Group, LLC (TCI), a Washington LLC, for the purpose of investing in real property in Oregon and elsewhere.

On November 28, 2007, Defendants used a straw purchaser, Erik Carlson, to submit three fraudulent mortgage-loan applications to Wells Fargo Bank to purchase three properties owned by TCI.[1]

Carlson's application for the 67th Avenue property contained false information as to Carlson's employment, monthly income, and assets and, in addition, omitted the business relationship Carlson had with VanBeenen.

On December 4, 2007, TCI provided the downpayment on the 67th Avenue property. Carlson did not reveal to Wells Fargo Bank that the downpayment was provided by TCI.

Based on the fraudulent information in the mortgage application, Wells Fargo Bank approved the mortgage loan and

---

[1] As noted below, in the Third Superseding Information the government charged VanBeenen with respect to only one of the properties: 7924 S.E. 67th Avenue, Portland, Oregon.

funded it on December 5, 2007.

On January 1, 2008, before any fraud was discovered, Wells Fargo Bank sold the loan to Fannie Mae for $204,100. After the loan fell into default, Fannie Mae foreclosed on March 3, 2009, and then sold the property on June 15, 2009, for $158,000.

On October 25, 2011, Defendant was charged in a Third Superseding Information with one count of making a False Statement to a Bank in violation of 18 U.S.C. §§ 2 and 1014. In the Third Superseding Information, the government charged VanBeenen only with respect to the 67th Avenue property.

On October 26, 2011, VanBeenen pled guilty to the charge in the Third Superseding Information and acknowledged he understood, among other things, that the Court would order restitution payments to "any victim of any offense to which I plead guilty" and "for . . . crimes involving fraud or deceit, it is mandatory that the judge impose restitution in the full amount of any financial loss or harm cause by any offense."

On February 22, 2012, the Court sentenced VanBeenen to one day imprisonment, five years of supervised release, and restitution to be determined.

On April 18, 2012, the Court held an evidentiary hearing as to the issue of restitution. At the hearing the government conceded the Court should only consider the 67th Avenue property

with respect to the issue of restitution.  Accordingly, the Court only considers the property at 67th Avenue when assessing Defendant's restitution obligation.

Also at the hearing the Court directed the parties to file supplemental memoranda as to the calculation of restitution by May 8, 2012.  With the benefit of those filings, the Court took the matter of restitution under advisement on May 8, 2012.

## **DISCUSSION**

Defendant asserts in his Supplemental Restitution Memorandum that (1) Fannie Mae is not a victim because whatever loss it incurred was not proximately caused by VanBeenen's offense of conviction, (2) the property should be valued at between $169,000 and $179,000 for purposes of calculating restitution, (3) Fannie Mae may not recoup any of the costs it incurred after taking title to the property, and (4) the Court should deduct Mortgage Insurance Premiums (MIP) and other proceeds from the restitution amount.

**I. Restitution generally.**

The Mandatory Victim Restitution Act (MVRA), 18 U.S.C. § 3663A, provides in pertinent part:

> (a)(1) . . . when sentencing a defendant convicted of an offense described in subsection (c), the court shall order . . . the defendant make restitution to the victim of the offense.

> (2) For the purposes of this section, the term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3664(e) establishes each party's burden of proof as follows:

> Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government. The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant. The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires.

The Court may only compensate a victim under the MVRA for "actual losses caused [directly] by the defendant's criminal conduct." *Gamma Tech Indus.*, 265 F.3d at 926 (citing *United States v. Rodrigues*, 229 F.3d 842, 845 (9th Cir. 2000)). Losses that result from an intervening cause or from criminal conduct other than the conduct to which the defendant pled guilty are not "actual losses" for which restitution may be ordered within the meaning of § 3663A. *See, e.g., United States v. Meksian*, 170 F.3d 1260, 1263 (9th Cir. 1999)(rejected mere "but for" standard for proving loss and reversed restitution order in fraudulent loan-application case because an intervening cause for the

5 - OPINION AND ORDER

erroneous issuance of the loan [an inaccurate environmental report] was not directly related to the offense conduct); *United States v. Sablan*, 92 F.3d 865, 870 (9th Cir. 1996)(reversed restitution order based on consequential damages such as expenses arising from meetings with law-enforcement officers investigating the crime because such expenses were not necessary to repair the damage caused by the defendant's criminal conduct); *United States v. Reed*, 80 F.3d 1419, 1421 (9th Cir. 1996)(reversed restitution order based on damage to private vehicles that occurred during flight from police when the offense of conviction was illegal possession of a firearm by a felon); *United States v. Tyler*, 767 F.2d 1350, 1351 (9th Cir. 1985)(rejected restitution award under then 18 U.S.C. § 3651 because losses based on depressed market prices were "too remote").

The Ninth Circuit, however, has also approved restitution awards that included losses one step removed from the "offense conduct" itself. *See, e.g., United States v. Rice*, 38 F.3d 1536, 1542 (9th Cir. 1994)(upheld restitution in a conspiracy and mail-fraud case based on the victim's inability to use the entire inventory of parts supplied by the defendant because the victim could not identify the parts that were defective); *United States v. Koenig*, 952 F.2d 267, 274-75 (9th Cir. 1991)(upheld restitution in case involving conspiracy to produce and to use counterfeit automated teller-machine cards for the cost of

reprogramming bank computers after the defendants had stolen ATM account information).

## II. Fannie Mae is a victim under the MVRA.

VanBeenen pled guilty to paragraph 1(d) of the Third Superseding Information:

> VAN BEENEN represented on a Real Estate Purchase and Sale Agreement, that he knew would be provided to Wells Fargo, that the seller, Team Capital and Investment Group, LLC, of which VAN BEENEN was a member and owner, would contribute up to 2% of the closing costs on behalf of ERIK CARLSON in the transaction, when in fact, in addition to 2% of closing costs, VAN BEENEN directed the seller to pay $25,808.87 on behalf of ERIK CARLSON in the form of a cashier's check, which was in excess of 2% closing costs.

VanBeenen contends, however, this conduct was not the proximate cause of any loss to Fannie Mae. VanBeenen asserts any such loss was caused by Carlson's inability to make payments on the loan rather than by the fact that TCI paid more than 2% to fund the downpayment because Wells Fargo provided the loan based on the creditworthiness of Eric Carlson and the Fair Market Value (FMV) of the property as collateral.

The Ninth Circuit rejected this argument in *United States v. Yeung*, 672 F.3d 594 (9th Cir. 2012). In that case the defendant recruited five individuals with good credit scores to serve as straw buyers to purchase and to refinance residences in California. *Id*. at 596. The defendant and other members of the conspiracy falsified information on the straw buyers' loan applications such as materially overstating the alleged

7 - OPINION AND ORDER

borrowers' incomes and assets and misstating their employment information and rental obligations. *Id.* The banks who originated the loans sold the mortgage loans to other banks before the fraud was discovered. *Id.* Despite her promises to the straw buyers, the defendant stopped making mortgage payments, which triggered foreclosure of the properties held as collateral. A jury ultimately convicted the defendant of various crimes associated with her involvement in the fraudulent real-estate investment scheme. *Id.*

Following the defendant's conviction, the district court held an evidentiary hearing to determine the amount of loss for purposes of sentencing and to determine restitution. Prior to the hearing the court reviewed the Presentencing Report (PSR) and the government's sentencing memo, both of which calculated the loss for restitution purposes as the "outstanding principal balance on the defaulted loans less any money recovered from a sale of the properties used as collateral for the loans." *Id*. at 599. The district court calculated restitution as the amount equal to the difference between the unpaid principal balance of the loans at the time of default less the net proceeds from the sales of the collateral property to third-party purchasers. *Id*. at 599-600.

On appeal the defendant contended the district court erred in its restitution orders because (1) the companies that

purchased the mortgage loans from the loan originators were not victims under the MVRA and (2) the district court improperly calculated the amount of restitution due. The Ninth Circuit affirmed in part and vacated in part. *Id*. at 606.

The Ninth Circuit affirmed the district court's determination that the secondary loan purchasers were victims for purposes of the MVRA. The Ninth Circuit noted

> [t]he MVRA defines the word "victim' as 'a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." § 3663A(a)(2). Although a defendant's conduct need not be the sole cause of the loss, any subsequent action that contributes to the loss, such as an intervening cause, must be directly related to the defendant's conduct. The causal chain may not extend so far, in terms of the facts or the time span, as to become unreasonable.

*Id.* at 600 (quotation omitted). The Ninth Circuit rejected the defendant's assertion that the companies that had purchased the fraudulent mortgage loans from the loan originators were not victims for purposes of the MVRA:

> [T]he evidence showed that the Long Beach Trust purchased the two loans originally issued by Long Beach Mortgage Company before [the defendant's] fraud had come to light. Further, the evidence showed that, due to [the defendant's] conduct, the borrower for each loan had misrepresented his financial ability to repay the loan. Because the Long Beach Trust purchased the loan without an awareness of its true value due to [the defendant's] fraud, the district court could reasonably conclude that [the defendant's] fraudulent conduct proximately harmed the Long Beach Trust. *See, e.g., James*, 564 F.3d at 1243 (approving a restitutionary award to loan purchaser). Therefore, the district court did not abuse its discretion in deeming the Long

> Beach Trust to be a victim for purposes of the MVRA and
> in making an award to Deutsche Bank as the trustee for
> the Long Beach Trust.

*Id*. at 603.  The Ninth Circuit also rejected the defendant's argument that the secondary purchasers of the loans were not victims because any losses they suffered were the result of the general collapse of the housing market rather than the defendant's fraud.  The court found

> [a]lthough an intervening cause unrelated to the
> offense conduct may cut off the causal chain between
> the defendant's conduct and the victim's loss, *see
> United States v. Brock-Davis*, 504 F.3d 991, 1000-01
> (9th Cir. 2007), here [the defendant] created the
> circumstances under which the harm or loss occurred
> through her use of false information that induced the
> Long Beach Trust to purchase the loan.  Because the
> Long Beach Trust's loss is directly related to [the
> defendant's] offense, the declining value of the real
> estate collateral, even if attributable to general
> financial conditions, does not disrupt the causal
> chain, *see Peterson*, 538 F.3d at 1077, and the victims
> of the fraud are entitled to restitution.

*Id*. at 603 n.5.

Pursuant to *Yeung*, the Court concludes Fannie Mae is a victim for purposes of restitution under the MVRA.

### III. Calculation of restitution amount.[2]

> The MVRA also provides guidance regarding the
> calculation of the restitution amount. 18 U.S.C.
> § 3663A(b).  The basic rule is that the victim is
> entitled to be made whole. . . .  Accordingly, in
> the case of an offense resulting in damage to or
> loss of a victim's property, the victim is
> entitled to return of the property,

---

[2] Exhibit one attached to this Opinion and Order reflects the calculations set out herein.

10 - OPINION AND ORDER

> § 3663A(b)(1)(A), or if the return of the property is "impossible, impracticable, or inadequate," the victim is entitled to the value of the property less "the value (as of the date the property is returned) of any part of the property that is returned," § 3663A(b)(1)(B).

*Yeung*, 672 F.3d at 600-01 (quotation and citations omitted).

The Ninth Circuit also has "developed some guidelines" for calculating restitution in cases involving a defendant's scheme to obtain secured real-estate loans from lenders. *Id.* "Generally district courts . . . begin by determining the amount of the unpaid principal balance due on the fraudulent loan, less the value of the real property collateral as of the date the direct lender took control of the property." *Id.* (citations omitted).

> [T]he lender generally takes control on the date the lender either (1) receives the net proceeds from the sale of the collateral to a third party at the foreclosure sale or (2) takes title to the real estate collateral at the foreclosure sale, at which time the new owner had the power to dispose of the property and receive compensation. The direct lender's losses may also be reduced by amounts recouped from resale of the loan or from other types of "return" of property. *Id*. (citation and quotation omitted).

*Id.*

The Ninth Circuit noted the general guidelines "require some adjustment when a victim purchased a loan in the secondary market, that is, where the victim is the loan purchaser as opposed to the loan originator." *Id*. at 601-02. Under those circumstances

11 - OPINION AND ORDER

>     the loan itself is the 'property' that has lost
>     value due to the fraudulent conduct of the
>     defendant.  Because the value of that loan is not
>     necessarily its unpaid principal balance [due to
>     various factors], . . . a district court
>     calculating the loss suffered by a victim who
>     purchased a fraudulent loan may begin by
>     determining how much the victim paid for the
>     fraudulent loan . . ., less the value of the real
>     property collateral as of the date the victim took
>     control of the collateral property.  As in a case
>     with an original lender, the district court may
>     consider other relevant factors that may increase
>     or decrease the amount of the loan purchaser's
>     loss.

*Id*. at 602.

    **A.    Undisputed facts.**

The record reflects Fannie Mae purchased the mortgage loan on the 67th Avenue property at issue on January 1, 2008, for $204,100.  It is undisputed that Fannie Mae foreclosed on the property and took title on March 3, 2009.  Finally, it is undisputed that Fannie Mae sold the property for $158,000 on June 15, 2009.

    **B.    Calculation of value of the property.**

The government contends the Court should value the property at $155,000 based on a Uniform Residential Appraisal Report completed March 13, 2009, which was only a few days after the foreclosure occurred, based on the Ninth Circuit's holdings in a number of cases prior to *Yeung* that the collateral should be valued at the time the lender "takes control" of the property and that the lender takes control at the time of the foreclosure.

*See, e.g., United States v. Davoudi*, 172 F.3d 1130, 1135 (9th Cir. 1999); *United States v. Gossi*, 608 F.3d 574, 577-78 (9th Cir. 2010).

At the hearing, however, the government conceded the Court "could" use the actual sale value of the collateral property ($158,000) in calculating restitution because the sale occurred only three months after the appraisal and foreclosure even though the government continued to argue the Ninth Circuit has held the property should be valued at the time of foreclosure.

As noted, the cases in which the Ninth Circuit held the property should be valued at the time of foreclosure preceded *Yeung*. In *Yeung* the Ninth Circuit explained:

> [T]he lender generally takes control on the date the lender *either* (1) receives the net proceeds from the sale of the collateral to a third party at the foreclosure sale . . . *or* (2) takes title to the real estate collateral at the foreclosure sale, at which time the new owner had the power to dispose of the property and receive compensation.

672 F.3d at 601 (citation omitted, emphasis added). Based on *Yeung*, therefore, this Court may find Fannie Mae took control of the property for valuation purposes either at the time that Fannie Mae took title through foreclosure or when it sold the property.

In addition, the Ninth Circuit has held "[a] district court may not order restitution such that victims will receive an

13 - OPINION AND ORDER

amount greater than their actual losses; to do so is plain error." *United States v. Rizk*, 660 F.3d 1125, 1137 (9th Cir. 2011).  "[D]istrict courts possess a degree of flexibility in accounting for a victim's complete losses." *Yeung*, 672 F.3d at 602 (citation omitted).

VanBeenen contends the Court should value the property at between $169,000 and $179,000 based on an historical Comparative Market Analysis prepared by VanBeenen's expert in March 2012.  As the government notes, however, VanBeenen's expert is not a licensed real-estate appraiser, and the expert conceded at the hearing that his value analysis is not one that would be accepted by lenders to substantiate fair-market value with respect to a mortgage loan.  In addition, VanBeenen's expert acknowledged his analysis was limited to the factors of location, size, and sales price of comparators and that he did not have any information as to the condition of the comparable homes or even as to the condition of the collateral property at issue here at the time of the foreclosure.  Finally, as noted, VanBeenen's expert conducted his analysis three years after the foreclosure whereas the appraisal on which the government relies was conducted at the time of the foreclosure and the property was sold only three months later.

Because the sale of the 67th Avenue property occurred quite close in time to the March 2009 appraisal and the property

14 - OPINION AND ORDER

sold for more than the appraisal amount, the Court finds the actual sale amount of $158,000 to be a more appropriate measure of the value of the property than the 2009 appraisal value of $155,000 or the 2012 comparative market analysis value of $169,000 - $179,000.  Accordingly, the Court values the property for the purposes of restitution at $158,000.

    **C.    Inclusion of fees, interest, and costs**.

VanBeenen contends the government has improperly included $25,768.02 in its restitution calculation of Fannie Mae's losses for accrued interest, legal fees, taxes, "other liquidation expenses," "other disbursement," and repairs. VanBeenen contends those costs should not be included because they were incurred after Fannie Mae took control of the property.

    In *Yeung* the court noted

> [b]ecause restitution should address a victim's actual losses, we have approved restitution awards that included other amounts in the calculation of loss, such as prejudgment interest (using the governmental loan rate), interest still due on the loan, *Davoudi*, 172 F.3d at 1136, and expenses associated with holding the real estate collateral that were *incurred by the lender before it took title to the property*.

672 F.3d at 601 (emphasis added).  It is, therefore, only appropriate for the Court to consider and to award as part of restitution those expenses incurred before Fannie Mae took title to the property.  VanBeenen contends the government has not established the additional costs were incurred before Fannie Mae

15 - OPINION AND ORDER

foreclosed on the property. The government, however, argues in its Supplemental Memorandum in Support of Restitution that

> [t]axes on the property, attorney fees and foreclosure costs clearly obviously occurred prior to foreclosure, particularly given that Fannie Mae only held this property for three months following foreclosure. Moreover, over $12,000 of the fees and costs was unpaid interest at the time of foreclosure.

Nevertheless, the government did not produce any evidence at the hearing or in its papers that identified the "other liquidation expenses" or "other disbursement." In addition, Regina Clincy, a Manager with Fannie Mae, does not make clear in her Declaration whether "other liquidation expenses," "other disbursement," or repairs were incurred before or after foreclosure. Clincy testifies in pertinent part:

> The spreadsheet contains records obtained and made in the regular course of Fannie Mae business, and it was the regular course of such business to obtain, make and keep these records. The records were made at the time of the recorded act, transaction, occurrence or event, or within a reasonable time thereafter. The person and/or system which made these records was under a business duty to do so accurately.
>
> The spreadsheet contains records showing the Acquisition cost of the mortgages related to the above properties, costs of arising out of foreclosure of those mortgages, and maintenance and repair of those properties, the appraised value at foreclosure or short sale price, and the economic loss suffered by Fannie Mae.

Decl. of Regina Clincy at 1. Clincy does not specifically state nor is it clear in this record whether "at the time of the

16 - OPINION AND ORDER

recorded, act, transaction, occurrence or event" means at the time of foreclosure. The Court, therefore, declines to assume those costs were incurred before foreclosure.

On this record the Court concludes the government has not met its burden to prove that other liquidation expenses, other disbursements, or repairs were costs incurred before Fannie Mae foreclosed on the property. Accordingly, the Court does not include those costs in the restitution calculation.

With respect to accrued interest, legal fees, and accrued taxes, the record reflects those costs were incurred before foreclosure, and, therefore, the Court includes them in the restitution award.

    **D. MIP.**

The record reflects Fannie Mae received $55,591.36 in MIP from Genworth Mortgage Insurance company and $2,885.57 in "other receipts." VanBeenen contends the Court should deduct those proceeds from the restitution amount to prohibit Fannie Mae from receiving compensation greater than the harm it suffered. VanBeenen maintains "the court needs to determine the full amount of the restitution, but the restitution order must be for the amounts of the victim's actual losses; they are not entitled to a windfall."

Although the government contends the Court must order VanBeenen to pay the full amount of restitution including the

17 - OPINION AND ORDER

amounts received by Fannie Mae from Genworth Mortgage, the government states "this Court can determine that Genworth is entitled to those amounts and order defendant to pay Genworth and not Fannie Mae." The government does not address and does not appear to contest that the $2,885.57 should be deducted from the restitution award.

18 U.S.C. §3664(f)(1) provides:

> (A) In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant.
>
> (B) *In no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution.*

Emphasis added.

The parties do not dispute MIP is the kind of insurance that the MVRA specifically precludes the Court from considering when calculating restitution. Nevertheless, it is clear that if the Court ordered VanBeenen to pay restitution to Fannie Mae in an amount that included the $55,591.36 Fannie Mae received in MIP, the Court would be ordering restitution to Fannie Mae in an amount greater than Fannie Mae's actual loss, which the Ninth Circuit has held is "plain error." *See United States v. Rizk*, 660 F.3d 1125, 1137 (9th Cir. 2011).

The MVRA provides:

> If a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation, but the restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation.

18 U.S.C. § 3664(j)(1).

On this record the Court concludes VanBeenen owes restitution in an amount that includes the MIP. The Court, however, also concludes pursuant to § 3664(j)(1) that VanBeenen must pay $55,591.36 in restitution to Genworth Insurance rather than to Fannie Mae. In addition, in accordance with § 3664(j)(1), the Court orders VanBeenen first to pay $2,939.47 to Fannie Mae as restitution and then to pay $55,591.36 in restitution to Genworth Mortgage Insurance.

Finally, the Court concludes Fannie Mae is not entitled to restitution of the $2,885.57 received in "other receipts."

## CONCLUSION

For these reasons, the Court **ORDERS** VanBeenen to pay restitution in the total amount of **$58,530.83.** VanBeenen shall first pay **$2,939.47** in restitution to Fannie Mae and then

**$55,591.36** in restitution to Genworth Mortgage.

IT IS SO ORDERED.

DATED this 23rd day of May, 2012.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge